UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSEPH G. DUNBAR,

                Petitioner,

                                          Case Number: 03-10232-BC

v.                                                   Honorable David M. Lawson

BRUCE CURTIS,

                Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

The petitioner Joseph G. Dunbar, a state inmate currently incarcerated at the Ryan Correctional Facility in Detroit, Michigan, has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 alleging that he is incarcerated in violation of his constitutional rights. Dunbar was convicted of first-degree criminal sexual conduct and possession of a firearm during the commission of a felony (felony firearm). The victim was his adult daughter. The petitioner was sentenced custody terms of two years for the felony firearm conviction and twenty to forty years for the rape conviction. The petitioner raises claims in this Court of ineffective assistance of counsel, denial of a full and fair appeal of right, undue delay in the adjudication of issues in his appeal of right, and prosecutorial misconduct. The respondent contends that the petitioner's claims lack merit, and the Court agrees. The petition for writ of habeas corpus, therefore, will be denied.

I.

The petitioner's conviction arises out of the sexual assault of his daughter, Aimee Lynn Johnson. Ms. Johnson, aged twenty-one at the time of Dunbar's 1991 trial, testified that in February 1990 she learned that Dunbar was her biological father. Ms. Johnson, who was living with her adoptive parents, met Dunbar through her biological mother, Stephanie Wilson.

Ms. Johnson testified that Dunbar raped her in February 1990 when she was visiting Ms. Wilson. Johnson did not tell her biological mother what had happened, but she said that she did tell her biological mother's friend Phillip Crockett. This incident did not form the basis of the petitioner's convictions.

Ms. Johnson testified that the petitioner raped her again on the night of December 4, 1990. Johnson explained that she was at a friend's house when she called her home answering machine to check for messages. Dunbar had left a message saying that he had not spoken to her in some time. Ms. Johnson returned Dunbar's call from her friend's house. She testified that Dunbar wanted to pick her up at her friend's house. Initially she refused, stating that she intended to spend the night with her friend, but she said that she relented when Dunbar persisted.

Johnson testified that the petitioner and her uncle, Gary Brayboy (Dunbar's brother), picked her up at approximately 10:30 p.m. Brayboy left Dunbar and Johnson at Johnson's apartment. Johnson noticed that Dunbar had a whiskey bottle with him. After the two entered the apartment, Dunbar confronted her and asked her why she had told Mr. Crockett what had happened between them in February. Johnson denied having told Mr. Crockett anything. Johnson then testified that Dunbar placed a handgun on the floor in front of him. Ms. Johnson became increasingly uneasy and repeatedly glanced at the front door. Dunbar then picked up the gun and warned her that if the police came to the door, he would "blow her . . . head off." Tr. (June 19, 1991) at 132.

Johnson testified that Dunbar then ordered her to perform fellatio on him, following which he made her get on the bed where he performed oral sex on her. Johnson testified that Dunbar then raped her vaginally and anally.

Dunbar eventually fell asleep and left Johnson's apartment at 7:30 the next morning when Mr. Brayboy came to pick him up. After Dunbar left, Johnson telephoned her biological mother, her adoptive parents, and the police. When police came to her home, they took the whiskey bottle and gun that Dunbar left behind.

Doctor Beverly Blaney testified that she is an emergency room physician at Detroit Receiving Hospital and that she treated Ms. Johnson on December 5, 1990, at approximately 11:00 a.m. Dr. Blaney further testified that Ms. Johnson had bruising in the genital area, consistent with forceful penetration. Dr. Blaney also testified that sperm were present in Ms. Johnson's vagina.

The petitioner's defense at trial was that he had not gone to Johnson's apartment that night and he did not have sexual intercourse with Aimee Lynn Johnson.

However, the petitioner's brother, Gary Brayboy, confirmed that on the night of December 4, 1990, he and Dunbar picked up Ms. Johnson at her friend's house. He testified that he dropped off Dunbar and Ms. Johnson off at Johnson's apartment, and he drove back the following morning at approximately 7:30 a.m. to pick up Dunbar.

Detroit Police Officer Merle Van Marter testified that he was the officer in charge of investigating the allegations made by Ms. Johnson. Van Marter arrested Dunbar on the morning of December 6, 1990, and he questioned him that afternoon. Van Marter testified that in response to questioning, Dunbar stated that on the night of the assault, he and Mr. Brayboy picked up Johnson at a friend's home at approximately 7:00 p.m., and they dropped her off at her apartment. Dunbar explained that he picked her up because someone had been threatening her and Johnson wanted someone to protect her. Dunbar denied having gone up to Ms. Johnson's apartment that evening. He told Van Marter that he did not have sexual intercourse with her.

Phillip Crockett, testifying for the defense, said that Ms. Johnson never told him that the petitioner had raped her. Defense witness Larry Rodgers testified that on December 4, 1990, Ms. Johnson telephoned him because she was trying to locate Dunbar because, she said, someone had threatened her life.

The petitioner did not testify in his own defense.

The Detroit Recorder's Court jury convicted Dunbar of one count of first-degree criminal sexual conduct and one count of felony firearm. The jury acquitted the petitioner of three additional counts of first-degree criminal sexual conduct. On July 15, 1991, the petitioner was sentenced to two years imprisonment for the felony firearm conviction to be followed by twenty to forty years imprisonment for the criminal sexual conduct conviction.

The petitioner claimed an appeal of right in the Michigan Court of Appeals and presented the following issues:

I.  The trial court erred by allowing the prosecution to use prior convictions to impeach defense witness Larry Rodgers' testimony, when two of the prior convictions had been reversed and the impeachment did not occur during cross-examination of the witness.

II. Prosecutorial misconduct occurred, when the prosecutor questioned a defense witness about his feeling intimidated by the defendant.

III. The trial court erred by giving a jury instruction regarding false exculpatory evidence where the evidence was a statement by the defendant to Officer Merle Van Marter that was allowed into evidence as past recollection recorded and there was no showing by the prosecution that the officer was unable to refresh his memory.

The petitioner presented the following additional issues in a *pro se* supplemental brief:

I.  The prosecution used a tainted gun at defendant's trial to convict defendant.

II. Prosecutor made a false statement about defense witness Larry Rogers being on parole on an arson conviction which was highly prejudicial to defendant.

    III.      Trial judge showed partiality throughout trial of defendant violating Code of Judicial Conduct Canon 3(1)(2)(4)(8).

    IV.      Prosecutor's misconduct occurred in closing argument to jury.

    V.      Defense counsel denied defendant this [sic] one of two possible defenses.

    VI.      Defense counsel failed to advise and assert [an] alcohol-induced diminished capacity defense.

    VII.      Defense counsel's failure to discredit prosecution witness complaining witness [sic].

    VIII.      Defense counsel's failure to object denied defendant a fair trial.

    IX.      Defense counsel deprived the defendant of a fair trial where he told the defendant erroneously that defendant's criminal record could be used to impeach him and the defendant did not take the stand in his own defense as a result of counsel's mistake.

The petitioner then filed a second *pro se* supplemental brief, raising the following additional claim:

    I.      Did the prosecutor violate the appellate-defendant's presumption of innocence clause, when the prosecutor brought out the fact that the appellate-defendant was residing in the Wayne County Jail through a defense witness?

While his appeal was pending in the Michigan Court of Appeals, the petitioner filed a "Motion for Leave to File Motion to Remand," requesting either a new trial or an evidentiary hearing on the claim of ineffective assistance of counsel. On December 2, 1992, the Michigan Court of Appeals granted the petitioner leave to file a motion to remand, and denied the motion to remand "for failure to persuade the Court of the necessity of remand at this time." *People v. Dunbar*, No. 145539 (Mich. Ct. App. Dec. 2, 1992). The petitioner filed an interlocutory application for leave to appeal to the Michigan Supreme Court. The Michigan Supreme Court denied leave to appeal. *People v. Dunbar*, No. 95528 (Mich. Feb. 26, 1993). The petitioner filed a motion for reconsideration, which also was denied. *People v. Dunbar*, No. 95528 (Mich. Apr. 30, 1993).

While his appeal was pending in the Michigan Court of Appeals, the petitioner filed a Motion For Correction of Trial Transcripts in the Michigan Court of Appeals. The Michigan Court of Appeals remanded the case to the trial court for consideration of the motion. *People v. Dunbar*, No. 145539 (Mich. Ct. App. Aug. 24, 1993). The trial court attempted to conduct a hearing on the petitioner's motion on November 5, 1993. However, as the hearing commenced the petitioner announced that he was firing his attorney – his fifth appellate attorney – and wished to be returned to prison to prepare papers because he suspected a conspiracy against him. The trial court permitted the petitioner's attorney to withdraw and stated that he would notify the Michigan Court of Appeals of the latest developments and await guidance from that court as to how to proceed. By letter dated December 20, 1994, the trial court advised the Michigan Court of Appeals of the recent developments, and sought direction from the Michigan Court of Appeals. The record does not reflect a response from the Michigan Court of Appeals.

On August 11, 1995, the Michigan Court of Appeals issued an opinion addressing the merits of the direct appeal and affirming the petitioner's convictions. *People v. Dunbar*, No. 145539 (Mich. Ct. App. Aug. 11, 1995).

The petitioner filed a delayed application for leave to appeal in the Michigan Supreme Court, presenting the following claims:

> I. Ineffective assistance of counsel for failure to object and to suppress false evidence – the hand gun shown to the jury and admitted into evidence.
>
> II. Ineffective assistance of counsel for failure to object to the prosecutor asking defense witness Phillip James Crockett was he afraid of the defendant. Failure to object denied defendant a fair trial.
>
> III. Defense counsel deprived the defendant of a fair trial where he told the defendant erroneously that defendant's criminal record could be used to impeach him and the defendant did not take the stand in his own defense as a result of counsel's mistake.

    IV.    Defense counsel denied the defendant a fair trial where he failed to put the complainant's mother on the witness stand and question her or her daughter concerning the defendant's theory of the case.

    V.    Trial counsel was not acting as counsel guaranteed in the Sixth Amendment of the Constitution, to afford the defendant a fair trial and equal protection of the Fourteenth Amendment.

The state supreme court denied the application for leave to appeal on December 27, 1995. *People v. Dunbar*, No. 104246 (Mich. Dec. 27, 1995).

The petitioner then filed a motion for relief from judgment in the trial court, arguing that he was denied due process of law because of the delay between his convictions and the rendering of the decision by the Michigan Court of Appeals, and that two of his appellate attorneys were ineffective. The trial court denied the motion for relief from judgment. *People v. Dunbar*, No. 90-013681 (Wayne County Circuit Court July 9, 2001).

The petitioner then filed a delayed application for leave to appeal in the Michigan Court of Appeals, raising the following claim:

> Where the defendant-appellate can demonstrate actual prejudice to his appeal of right and the delay in the Michigan Court of Appeals was over four years one month before adjudication does this constitute a denial of due process and equal protection of the laws under the Constitution of the Sate of Michigan of 1963 (as amended) Article 1, § 2, and Article 1, § 20; and the Fourteenth Amendment to the United States Constitution?

The Michigan Court of Appeals denied leave to appeal. *People v. Dunbar*, No. 236498 (Mich. Ct. App. Mar. 21, 2002). The petitioner filed a delayed application for leave to appeal in the Michigan Supreme Court, presenting the same claim, and the state supreme court denied leave to appeal once again in a form order. *People v. Dunbar*, No. 121262 (Mich. Dec. 4, 2002).

The petitioner then filed the present petition for a writ of habeas corpus framing the following issues:

I. Violation of the right to the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution.

II. Petitioner was denied his Fourteenth Amendment rights to due process and equal protection of the laws because of incorrect transcripts of his trial showing him to be innocent. Thus, denied Petitioner a full and fair appeal of right.

III. Petitioner suffered due process violation under the Fourteenth Amendment to the United States Constitution and equal protection of the laws when Petitioner's appeal of right took three years and five months without Petitioner receiving a hearing on the issue of ineffective assistance of trial counsel and correction of transcripts.

IV. Petitioner was denied equal protection of the laws of the United States Constitution of the Fourteenth Amendment where the prosecutor knowingly convicted him with false evidence denying him a fair trial under the Sixth Amendment to the United States Constitution.

II.

Although the petitioner's trial occurred in 1991, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), govern this case because the petitioner filed this habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). That Act "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams*, 529 U.S. at 409; internal quotes omitted). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also Harbison v. Bell*, 408 F.3d 823, 828 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493-93 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc); *Lewis v. Wilkinson*, 307 F.3d 413, 418 (6th Cir. 2002).

However, as will be discussed below, the state appellate courts did not discuss a rationale for denying certain components of the petitioner's ineffective assistance of trial counsel claims. Where the state court did not evaluate the merits of the petitioner's federal claim, the deferential standard of review prescribed by the AEDPA cannot be applied, since "[t]his statute by its own terms is applicable only to habeas claims that were adjudicated on the merits in State court. . . . Where, as here, the state court did not assess the merits of a claim properly raised in a habeas petition . . . questions of law and mixed questions of law and fact [are reviewed] *de novo*." *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) (internal quotes and citations omitted); *see also Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004) (holding that where "no state court has adjudicated the merits of Clinkscale's ineffective assistance claim . . . the deferential standard of review set forth in section 2254(d) is inapplicable").

With these standards in mind, the Court will address the petitioner's contentions in turn.

A.

The petitioner claims that he is entitled to habeas corpus relief because his trial attorney, Jeffrey G. Collins, rendered ineffective assistance of counsel and thus deprived the petitioner of his

right to counsel guaranteed by the Sixth Amendment. The petitioner criticizes his attorney's performance by citing to these perceived deficiencies: (1) failing to object to the admission into evidence of a silver handgun, when the police report stated that the gun police found at the scene was black; (2) failing to cross-examine the victim adequately regarding a unique physical characteristic on the petitioner's stomach; (3) failing to call the victim's mother, Stephanie Wilson, as a witness; (4) taking the petitioner's pen during the trial so that the petitioner could not write notes; and (5) advising the petitioner not to take the witness stand.

To show a violation of the right to effective assistance of counsel, a petitioner must establish two components: first that his attorney's performance was deficient "in that it fell below an objective standard of reasonableness," *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005) (quoting *Strickland v. Washington,* 466 U.S. 668, 687 (1984)); the second aspect of the test is a demonstration of prejudice, that is, a showing that counsel's deficient performance may have altered the results of the trial. *Ibid.*

An attorney's performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. Also, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687. Stated another way, "the

-11-

benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Cyars v. Hofbauer*, 383 F.3d 485, 491 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 686).

The petitioner argues first that his attorney was ineffective because he did not object to the admission into evidence of a silver handgun, since a police report described the gun found at the scene as black. The Michigan Court of Appeals did not offer any explanation for its decision that this aspect of the petitioner's ineffective assistance of counsel claim lacked merit. Therefore, this Court will independently review the claim. *See Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000)).

The petitioner argues that his trial attorney should have resisted the admission of the weapon – a silver handgun – in evidence because a police document reported that the gun found at the scene was black. Although such discrepancies may affect the weight given the evidence by the fact finder, they do not undermine admissibility if an adequate foundation is established otherwise. At trial, Ms. Johnson identified the silver gun offered in evidence as the gun in the petitioner's possession at the time of the assault. A police officer identified the gun as the same gun taken from the victim's apartment. Because the two witnesses positively identified the silver gun, there was no basis for the petitioner's trial attorney to object to admissibility; his disinclination to raise the issue did not fall outside the wide range of professionally competent assistance.

Next, the petitioner argues that a unique physical feature on his stomach, something akin to a second navel, should have provided fodder for more effective cross-examination of the victim. The argument, presumably, is that the victim's inability to describe this anatomical oddity suggested that the petitioner never raped her, or at least did not bare his midriff while doing so. As with the

petitioner's first claim, the state court of appeals denied this claim without offering an explanation. Accordingly, the Court must conduct an independent review of the record. On cross-examination, trial attorney Collins asked Ms. Johnson if there was anything distinctive about the petitioner's stomach. She replied that he had scars on his stomach. Mr. Collins then asked if she noticed a hole in his stomach. Ms. Johnson testified that she did not recall a hole. Mr. Collins did not question her further regarding this issue. Although Ms. Johnson did not specifically testify that the petitioner had a hole in his stomach, she did testify to scars. A reasonable attorney might decide – perhaps wisely – that there was not much to gain from quibbling over the difference between a scar and a hole. After the trial, the petitioner contested his attorney's competence by filing a grievance with the Michigan Attorney Grievance Commission. In response to the grievance, Mr. Collins stated that the hole in the petitioner's stomach was so small it could not be seen easily. It appears that the petitioner's stomach received about all of the attention it deserved at trial. In light of the substantial deference afforded to counsel under *Strickland*, the court cannot say that trial counsel's failure to plan the defense around the twin omphalos theory amounted to substandard performance.

The petitioner's third claim is that his attorney was ineffective for failing to call the victim's biological mother as a witness. The state court of appeals concluded that Mr. Collins' decision not to call certain witnesses was a matter of trial strategy and did not render him ineffective. *People v. Dunbar*, slip op. at 2. The petitioner alleges that if Stephanie Wilson had been called as a witness she would have admitted that she told Ms. Johnson to fabricate a story that the petitioner had raped her because Ms. Wilson was angry with the petitioner for not giving her all the cocaine she wanted. Other than this conclusory allegation, the petitioner provides no other support for his assertion that Ms. Wilson would have given such testimony. A conclusory allegation is insufficient to show that the state court's decision was contrary to or an unreasonable application of Supreme Court precedent.

Fourth, the petitioner claims that his attorney was ineffective because he took the petitioner's pen from him during trial so that the petitioner could not write notes to him during the testimony of witnesses. The state court of appeals did not provide any reasoning for its denial of this claim, and the Court will therefore conduct an independent review. *See Harris*, 212 F.3d at 943. In response to an inquiry from the Michigan Attorney Grievance Commission, Mr. Collins stated that he advised the petitioner not to write during the trial because jurors find that behavior distracting. Mr. Collins confirmed that the petitioner gave him many notes prior to the start of testimony and during breaks in the trial. The petitioner does not allege any prejudice resulting from his attorney's request that he not write notes during testimony. There is no evidence that this request resulted in a breakdown of attorney-client communications. Thus, the petitioner has failed to establish ineffective assistance of counsel with respect to this claim.

Finally, the petitioner claims that his attorney was ineffective by advising the petitioner not to take the witness stand in his defense at trial. The Michigan Court of Appeals rejected the ineffective assistance of counsel claim on this ground. *People v. Dunbar*, slip op. at 2. The petitioner argues that his attorney made a mistake when he told the petitioner that a prior conviction could be used to impeach him if he testified, because the conviction was too old to be used under Michigan's evidentiary rules. The petitioner's last prior conviction was rendered in 1980, over ten years prior to the date of trial. Mr. Collins, in response to an inquiry from the Michigan Attorney Grievance Commission, stated that the petitioner's past criminal record was not the reason he advised the petitioner not to testify. Instead, he advised the petitioner not to testify because he felt the petitioner's demeanor and attitude would be unfavorably received by the jury.

A defendant has a constitutional right to testify at his trial. That right may be waived, but only if the waiver is knowing and voluntary. *See Rock v. Arkansas*, 483 U.S. 44, 49 (1987). An

attorney may – indeed, ought to – advise the defendant whether to take the stand and testify, but the decision whether to do so ultimately is the defendant's. *Gonzales v. Elo*, 233 F.3d 348, 356 (6th Cir. 2000).

The premise of the petitioner argument on this ground – that his attorney gave him incorrect advice upon which he relied in making his decision not to testify – is undermined in two ways. First, Mr. Collins denies basing his advise that the petitioner not testify on the petitioner's prior criminal history. Second, the petitioner's prior conviction was not too old to be used to impeach him. Michigan Rule of Evidence 609(c) provides a prior conviction may not be used to impeach a witness "if a period of more than ten years has elapsed since the date of conviction or of the release of the witness from the confinement imposed for that conviction, *whichever is the later date*." Mich. R. Evid. 609(c). The petitioner was not released from confinement for his 1980 conviction until 1984, within ten years of his 1991 trial. Even if the petitioner relied upon advice from Mr. Collins regarding the admissibility of his prior conviction, the petitioner has not shown that advice to be incorrect. There was no substandard performance.

B.

Next, the petitioner alleges that he was deprived of his right to due process because the trial court transcripts were inaccurate. The petitioner claims that certain "statements, events, questions, and answers" were missing from the transcript, and that these missing parts established his innocence.

While his direct appeal was pending in the Michigan Court of Appeals, the petitioner filed a motion for correction of trial transcripts in the Michigan Court of Appeals, which as noted earlier, was referred to the trial court for adjudication. *People v. Dunbar*, No. 145539 (Mich. Ct. App. Aug. 24, 1993). The trial court attempted to conduct a hearing regarding the petitioner's motion on

November 5, 1993. As the hearing commenced, the petitioner announced that he was firing his attorney – his fifth appellate attorney – and wished to be returned to prison to prepare papers because he suspected a conspiracy against him. The trial court judge permitted the petitioner's attorney to withdraw and stated that he would notify the Michigan Court of Appeals of the latest developments and await guidance from that court on how to proceed. The trial judge did just that in a letter dated December 20, 1994. Nothing in the record indicates that the trial court received a response from the Michigan Court of Appeals. The Michigan Court of Appeals sent a letter to the petitioner dated November 21, 1994 stating that it had received nothing from the trial court indicating that a new hearing date had been scheduled for the petitioner's motion to correct trial transcript. The state court of appeals asked the petitioner to advise the court of the status of his appeal at his earliest opportunity, and it informed the petitioner that the matter would be considered eligible for formal submission if the petitioner did not respond by December 19, 1994. The record does not indicate any response from the petitioner. The Michigan Court of Appeals issued an opinion affirming the petitioner's convictions on August 11, 1995.

In his petition, the petitioner alleges that the following interchange took place in the trial court, which he states is missing from the transcript:

> Under cross-examination, attorney Collins at trial asked the complainant "No rape ever occurred?" The trial judge interrupted saying "Mr. Collins!" Attorney Collins stated he believed that he had a right to ask that question and the complainant then answered, "But he's upset now." The Judge then immediately called a recess. This is missing from the trial transcript.

Petition at p. 5B-2.

The following exchange *is* reflected in the trial court transcript:

> Q: (by Mr. Collins): When he allegedly raped you, in February, you made no efforts to contact your biological mother.

> A: (by Ms. Johnson): No, because it was an embarrassing situation, and I didn't think a lot of people would believe it.
>
> Q: Because it didn't happen.
>
> The Court: Is that a statement or a question?
>
> Q: (by Mr. Collins): They wouldn't believe it, because it didn't happen, it was no rape.
>
> The Court: Is that a question or a statement, Mr. Collins?
>
> Mr. Collins: Yes, it's a question. I apologize. It's a question.
>
> The Court: I think you need to rephrase.
>
> Q: (by Mr. Collins): You thought no one would believe you because a rape never happened.
>
> A: No, I thought no one would believe me because I'm a – what do you call it? An acquaintance, or – you know, this is not the most typical situation here, so, you know, I thought, you know, I'd better keep my mouth shut, or whatever, 'cause I thought nobody would believe me, because it's embarrassing.

Tr. (Oct. 20, 1991) at 15-16.

A defendant "'does not have a constitutional right to a totally accurate transcript of his criminal trial.'" *Carpenter v. Vaughn,* 296 F.3d 138, 155 (3rd Cir. 2002), *quoting Tedford v. Hepting*, 990 F.2d 745 (3rd Cir. 1993). A defendant's constitutional rights are violated only if the inaccuracies in the transcript adversely affect the outcome of the criminal proceedings, such as by preventing or inhibiting meaningful review. Even assuming that the truth of petitioner's account of the exchange that allegedly occurred, the petitioner has failed to show how these alleged inaccuracies adversely affected the outcome of his criminal proceedings. The allegedly-omitted exchange was inconsequential to any claims asserted by the petitioner on appeal. Thus, the alleged inaccuracy is inadequate to state a cognizable claim under section 2254.

C.

The petitioner claims that the Michigan Court of Appeals' delay in ruling on his direct appeal violated his rights under the Due Process Clause. In some circumstances, a state appellate court's excessive delay in deciding a direct appeal may give rise to a due process claim. *See Harris v. Champion*, 15 F.3d 1538, 1556 (10th Cir. 1994); *Allen v. Duckworth*, 6 F.3d 458, 459-60 (7th Cir. 1993). Because delays frequently recur in the justice system, courts usually turn to the analysis set forth in *Barker v. Wingo*, 407 U.S. 514 (1972), to determine whether a delay in the state appellate process violates due process. The Court in *Barker* set forth the following factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530.

The petitioner, through counsel, filed his direct appeal in state court on March 4, 1992. The Michigan Court of Appeals issued an opinion affirming his conviction on August 11, 1995. During this three year and five month interim period, the petitioner had five different appellate attorneys, filed an interlocutory appeal to the Michigan Supreme Court, and filed a motion to correct transcripts, pursuant to which the Michigan Court of Appeals remanded the matter to the trial court. The petitioner failed to respond to an inquiry from the Michigan Court of Appeals regarding the status of his motion to correct transcripts in the trial court. Under the circumstances, the Court finds the length of the delay was not unreasonable, much of the cause is attributable to the petitioner, and the petitioner has failed to demonstrate any prejudice resulting from the delay. Under the circumstances, the Court finds that the delay in adjudicating his appeal did not violate the petitioner's due process rights.

D.

The petitioner claims that he is entitled to habeas corpus relief because the prosecutor engaged in misconduct when he knowingly used false evidence, that is, the silver handgun, later

-18-

identified by the victim as the gun in the petitioner's possession during the assault. The petitioner argues that the gun admitted into evidence was silver, but the police report indicated that the gun seized from the victim's home was black.

The Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). However, prosecutorial misconduct will form the basis for a new trial and habeas relief only if the relevant misstatements were so egregious so as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974). In deciding whether prosecutor engaged in misconduct that warrants habeas corpus relief, the Court must first decide whether the prosecutor's actions were improper and then determine whether they were sufficiently flagrant by considering four factors: (1) the likelihood that the statements would prejudice the defendant or mislead the jury; (2) whether the remarks were isolated or part of a pattern; (3) whether the prosecutor's statements were deliberately or accidentally presented to the jury; and (4) whether the other evidence against the defendant was substantial. *Gall v. Parker*, 231 F.3d 265, 311 (6th Cir. 2000), *overruled on other grounds by Bowling v. Parker*, 344 F.3d 487, 501 n.3 (6th Cir. 2003),  (citing *United States v. Carroll*, 26 F.3d 1380, 1385-87 (6th Cir. 1994)).

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court of Appeals, held:

> The record does not support defendant's claim that evidence known to the prosecutor to be false was introduced to obtain defendant's conviction. . .

*People v. Dunbar*, slip op. at 1.

Police Officer James Wright identified the gun admitted into evidence as that found at the scene of the rape in Ms. Johnson's apartment. Ms. Johnson also testified that the exhibit was the same gun with that the petitioner threatened her.

The petitioner has failed to show that the testimony adduced by the prosecutor identifying the gun as that used in the assault was false. The state court's opinion that no misconduct occurred was not contrary to or an unreasonable application of Supreme Court precedent. The petitioner, therefore, is not entitled to habeas corpus relief with respect to this claim.

### III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

It is further **ORDERED** that the petitioner's motion for bond [dkt # 33] is **DENIED** as moot.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: June 8, 2005

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 8, 2005.

s/Carol J. Greyerbiehl
CAROL J. GREYERBIEHL

---